IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: | ) |
| | ) |
| Latoya Steward, | ) Case No. 11-46399-705 |
| | ) |
| Debtor. | ) Chapter 7 |
| _____ | ) |
| | ) |
| Latoya Steward, | ) Adv. No. 13-04284-705 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Critique Services LLC, James Robinson, | ) |
| Ross Briggs, Beverley Diltz, Renee | ) |
| Mayweather, and Parties Unknown, | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, Latoya Steward, and hereby petitions this Court for relief as follows:

**Jurisdiction**

1. The Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. § 1334(b).

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) as the claims presented are created and determined by Title 11 of the United States Code.

3. This Court represents the proper venue for this proceeding pursuant to 28 U.S.C. § 1409(a).

**Parties**

4. The Plaintiff is a Missouri resident who sought out and obtained the legal services of the Defendants to proceed in a bankruptcy case filed under Title 11 and who was harmed thereby.

5. The Plaintiff is an assisted person as defined by 11 U.S.C. § 101(3).

6. Defendant Critique Services LLC is a limited liability company formed under the laws of the State of Missouri for the purpose of providing bankruptcy services.

7. Defendant James Robinson is an attorney licensed to practice law in the State of Missouri and the United States District Court for the Eastern District of Missouri who was the original attorney of record for the Plaintiff in case 11-46399, the bankruptcy case which underlies this Complaint.

8. Defendant Ross Briggs is an attorney licensed to practice law in the State of Missouri and the United States District Court for the Eastern District of Missouri who entered into a retainer agreement with the Plaintiff for the purpose of filing a bankruptcy for the Plaintiff in the United States Bankruptcy Court for the Eastern District of Missouri.

9. Defendant Beverly Diltz, formerly known as Beverly Holmes, is the organizer and registered agent for Critique Services LLC, who is affiliated with Critique Services LLC as an owner, an employee, or both, and who provides legal services in connection thereto.

10. Defendant Renee Mayweather is an employee of other Defendants.

11. Derotha Conners is an employee of other Defendants.

12. Derotha Conners is a debtor in a Chapter 7 bankruptcy filed in the Eastern District of Missouri on October 22, 2013 and assigned case number 13-49620.

13. Ms. Conners did originally schedule the Plaintiff as a creditor, but subsequently amended her Schedule F to list the Plaintiff's claim as a disputed debt in an unknown amount on January 7, 2014.

14. Ms. Conners received a discharge in her Chapter 7 bankruptcy on May 28, 2014.

15. Ms. Conners is not a Defendant in this complaint.

16. Defendants Beverly Diltz and Renee Mayweather are not licensed to practice law.

17. Defendants Parties Unknown are persons who are affiliated with other named Defendants, whose full and true identities are as of yet unknown to the Plaintiff, and whose actions have harmed the Plaintiff.

**Facts**

18. At some point in 2009 the Plaintiff came to believe that she was insolvent and made the decision to seek legal advice about obtaining protection and relief under Title 11.

19. The Plaintiff became aware of the legal services of the Defendants through a radio commercial advertising their services.

20. The Plaintiff initially went to the offices of the Defendant in or around October of 2009.

21. At her initial visit, the Plaintiff was met by Derotha Conners.

22. Ms. Conners is a non-attorney in the employ of other Defendants.

23. The Plaintiff tendered to Derotha Conners $199.00 for the attorney fees for a bankruptcy filed under Chapter 13 of Title 11 and signed a retainer agreement with Defendant Ross Briggs without meeting or consulting with Defendant Briggs.

24. The Plaintiff was given a questionnaire to complete and later return to the Defendants.

25. The Plaintiff was advised to provide income tax returns and pay stubs to the Defendants before her case could be filed.

26. The Plaintiff was advised to pay for and complete the pre-bankruptcy credit counseling course required by 11 U.S.C. § 109(h).

27. The Plaintiff was advised at this time that her bankruptcy would be handled in a professional and expeditious manner and that her case would be filed shortly after she completed her pre-bankruptcy credit counseling course and returned the questionnaire, tax returns and pay stubs to the Defendants.

28. The Plaintiff returned her completed questionnaire to the Defendants along with documentation that had been requested of her in or around November of 2009.

29. The Plaintiff met with a Defendant who is a Party Unknown who identified herself as April (hereafter "April") at her second visit to the office of the Defendants.

30. April is a non-attorney in the employ of other Defendants.

31. The Plaintiff was questioned by April as to her intention to file Chapter 13 instead of Chapter 7, to which the Plaintiff responded that she did not believe that she qualified for

Chapter 7 due to the amount of her income.

32. April further replied with statements to the effect of "that won't be a problem" and "why would you want to pay people back?"

33. At this meeting April asked the Plaintiff if she had any dependents, to which the Plaintiff replied in the negative.

34. April then asked the Plaintiff if she had any family members with dependents, to which the Plaintiff replied affirmatively.

35. April then requested the gender and ages of these children from the Plaintiff.

36. When the Plaintiff questioned the use of this information in her bankruptcy documents April replied that this was a normal practice for the Defendants and it did not matter that the Plaintiff provided no direct financial support for these children, that the children did not reside with the Plaintiff, and that the Plaintiff did not claim these children on her income tax returns.

37. The Plaintiff provided the Defendants with the gender and ages of the Plaintiff's sister's three children based on the assurances given to her by April.

38. The use of additional "dependents" inflated the Plaintiff's household size on her Official Bankruptcy Form B22a – Statement of Current Monthly Income and Means Test Calculation.

39. The result of inflating the Plaintiff's household size was to artificially increase the applicable median household income threshold for the Plaintiff and thus show the Plaintiff as a below median income debtor.

40. The result of this deception was to make the Plaintiff's bankruptcy easier for the Defendants to complete.

41. The Plaintiff was then sent back to Derotha Conners by April for the purpose of changing her case to one which would eventually be filed under Chapter 7 rather than Chapter 13.

42. At this time Derotha Conners advised the Plaintiff that she needed to provide her with an address for a close friend or family member in the St. Louis area as Defendant Robinson

did not travel to St. Charles County to attend bankruptcy proceedings.

43. The Plaintiff questioned this practice but was reassured and advised by Derotha Conners that this was the usual course of business for the Defendants and that the actual address did not matter as long as the Plaintiff resided within the State of Missouri.

44. The Plaintiff provided the Ms. Conners with the address of her cousin based on the assurances given to her by Ms. Conners.

45. At some point, in 2010 the Plaintiff's cousin moved and the Plaintiff provided the Defendants with an updated address for the Plaintiff's cousin.

46. The bankruptcy documents that were originally filed with the Court listed the Plaintiff's address as the address of the Plaintiff's cousin rather than the Plaintiff's actual address.

47. The Plaintiff did not actually reside with her cousin but in fact resided at the address she had originally provided to the Defendants, a different address in a different city and county than the one used in her original bankruptcy filings.

48. The purpose of misstating the Plaintiff's address was to have her bankruptcy show that she resided in St. Louis County rather than St. Charles County.

49. The result of listing an address in St. Louis County rather than St. Charles County was that the Plaintiff's attorney did not have to attend the Meeting of Creditors held pursuant to 11 U.S.C. § 341 in Wentzville, MO and instead could more conveniently attend that meeting in St. Louis, Missouri.

50. The Plaintiff continued to interact with the Defendants, mostly by telephone and facsimile transmission, over the next 21 months in an attempt to have her bankruptcy filed.

51. The Plaintiff tried dozens of times to contact the Defendants over these months in an attempt to expedite the filing of her bankruptcy.

52. The Defendants maintained a phone system that segregated new clients from existing clients, and when the Plaintiff would properly select the option for existing clients the Plaintiff's phone call would be sent to a voicemail system.

53. On numerous occasions the Plaintiff was told by the Defendant's voicemail system that the system was full and the Plaintiff could not leave a message.

54. Many of the phone messages that were left by the Plaintiff for the Defendant were never returned.

55. On many of the occasions when the Plaintiff did interact with the Defendants, either by selecting the option for new clients on the Defendant's phone system or going to the Defendant's office without an appointment, the Plaintiff was told that the delay was due to the fact that the Plaintiff had failed to provide the Defendants with documentation necessary for her bankruptcy, even though such documentation had previously been provided in a timely manner by facsimile transmission.

56. As a result of the lack of diligence by the Defendant the Plaintiff obtained and paid for at her own expense the pre-bankruptcy credit counseling certification required under 11 U.S.C. § 109(h) three times, as such certifications expire after 180 days.

57. At some point in late 2010, the Plaintiff was contacted and advised to come to the Defendants' office for a meeting with Defendant James Robinson.

58. Until this point the Plaintiff had still not actually met with any of the Defendants who were licensed to practice law.

59. The Plaintiff was therefore legally counselled and advised by non-attorneys as to whether she should file bankruptcy, under which Chapter of Title 11 she should file, what her obligations were under the bankruptcy code and what the penalties were for failing to meet these obligations.

60. At the Plaintiff's first meeting with him in late 2010, Defendant Robinson spent approximately 20 minutes reviewing the Plaintiff's bankruptcy petition, statements, and schedules while the Plaintiff watched.

61. The Plaintiff did not review her bankruptcy documents at this time.

62. At the conclusion of the meeting the Plaintiff was told that she needed to provide additional pay stubs to the Defendants and thereafter she would be contacted when her

      petition was ready to be signed.

63. The Plaintiff called her employer and requested that her employer fax the pay stubs requested directly to the Defendants on the same day.

64. The Plaintiff's employer did in fact transmit the Plaintiff's pay stubs to the Defendants by facsimile shortly thereafter.

65. The Plaintiff was served with summons by the Associate Circuit Court of St. Charles County, Missouri in the civil proceeding 1011-CV02899, the Loan Machine v. Steward, on October 11, 2010.

66. The Plaintiff contacted the Defendants and advised them of the civil proceeding against her shortly thereafter.

67. The Defendants advised the Plaintiff that they still required pay stubs.

68. The Plaintiff again called her employer and requested that they fax the requested pay stubs directly to the Defendants.

69. The Plaintiff's employer again transmitted the Plaintiff's pay stubs to the Defendants by facsimile shortly thereafter.

70. The Plaintiff called her employer to either request that her pay stubs be sent to the Defendant or to confirm that they had, in fact, been sent to the Defendants at least 10 times between her meetings with Defendant James Robinson.

71. Default judgment was entered against the Plaintiff in civil case 1011-CV02899, the Loan Machine v. Steward, in St. Charles County, on February 8, 2011.

72. Garnishment interrogatories were issued by judgment creditor, the Loan Machine, upon the Plaintiff's employer on March 31, 2011.

73. The original bankruptcy Form B7 – Statement of Financial Affairs states that the Plaintiff had not been a party to a lawsuit within 12 months preceding her case or that the Plaintiff had been subject to a wage attachment within the same period, despite the fact that the Plaintiff had specifically advised the Defendants about the lawsuit and garnishment by the Loan Machine.

74. The Plaintiff met with Defendant James Robinson for the second and final time on May 5, 2011.

75. The Plaintiff was presented with her bankruptcy petition, schedules, and statements by a non-attorney staff member who told the Plaintiff to review the documents by herself and to sign the documents in the places that had been tabbed, or flagged, by small pieces of paper that extended over the edge of the documents.

76. The Plaintiff then executed these documents in isolation without consulting with a Defendant who is licensed to practice law at the time that they were executed.

77. The Plaintiff met with Defendant James Robinson after she had executed the bankruptcy documents on the same occasion.

78. Defendant Robinson did not review the bankruptcy documents with the Plaintiff.

79. At this time Defendant Robinson was specifically advised by the Plaintiff that she resided in St. Charles County, as the two discussed the improvements to the Missouri highway system in that County.

80. The Plaintiff's bankruptcy documents were filed by the Defendants approximately 30 days after this meeting.

81. None of the Defendants or their associates contacted the Plaintiff between the time the bankruptcy documents were executed and when they were filed with the Court to confirm that the documents were still accurate considering the expanse of time between their execution and their filing with the Court.

82. None of the Defendants ever advised the Plaintiff that the documents that she was executing were statements made under penalty of perjury and the consequences of making false statements.

83. None of the written disclosures required under 11 U.S.C. § 527 were provided to the Plaintiff by the Defendants.

84. The bankruptcy documents contained numerous factual errors unknown to the Plaintiff due to the fact that the Plaintiff did not know what she was supposed to be reviewing the

        documents for, and that none of the Defendants actually reviewed the documents with her.

85. One of the inaccuracies in the bankruptcy documents was a gross understatement of the Plaintiff's income in Official Bankruptcy Form B22a – Statement of Current Monthly Income and Means Test Calculation, which stated that the Plaintiff was a below median income debtor for a household size of one in the State of Missouri.

86. The Plaintiff also executed Official Form B8 – Statement of Intent, whereby the Plaintiff stated on the record that she intended to enter into a reaffirmation agreement with Ford Motor Credit in order to waive the discharge of the debt securing the Plaintiff's 2006 Ford Explorer.

87. At some point prior to August 22, 2011, the attorney for Ford Motor Credit provided the Defendants with an unexecuted reaffirmation agreement that contained a restatement of the terms of the debt to be reaffirmed.

88. The reaffirmation required disclosures relating to the Plaintiff's income, expenses, whether the debt created an undue hardship and if so how this would be mitigated, and whether or not the Plaintiff was represented by an attorney in connection with the reaffirmation agreement.

89. The Defendants completed the reaffirmation agreement on behalf of the Plaintiff without consulting her.

90. The reaffirmation agreement showed on lines 7B, 8B, 9B, and 10B that after deducting payment of the Plaintiff's expenses and the debt to be reaffirmed that the Plaintiff had a monthly shortfall of $591.67, thus creating the presumption that reaffirming the debt to Ford Motor Credit created an undue hardship upon the Plaintiff.

91. Later in the agreement the Defendants indicated that the Plaintiff would make the payments on the reaffirmed debt by obtaining a second source of employment.

92. The Plaintiff never indicated to the Defendants that she intended to get a second source of employment.

93. The Plaintiff had in fact previously indicated to the Defendants that she had a second employer during the six months prior to her filing bankruptcy, that she had stopped working for this employer three months before her case was filed, and that she had no intention of working for more than one employer in the future.

94. Defendant James Robinson certified to the Court by executing the reaffirmation agreement on July 11, 2011 that the Plaintiff had been fully informed as to the agreement, that reaffirming the debt did not create undue hardship upon the Plaintiff, and that Mr. Robinson had advised the Plaintiff of the legal consequences of defaulting on the agreement.

95. The Defendants advised the Plaintiff to come to their office to sign the reaffirmation agreement at some point between July 11, 2011 when Defendant Robinson executed the reaffirmation agreement and August 10, 2011 when the Plaintiff executed it.

96. The Plaintiff did, in fact, come to the offices of the Defendant on August 10, 2011 and executed the reaffirmation agreement.

97. The Defendants transmitted the executed reaffirmation agreement by facsimile to the attorney for Ford Motor Credit on August 19, 2011.

98. The attorney for Ford Motor Credit executed the reaffirmation agreement on August 19, 2011.

99. The reaffirmation agreement was filed with the Court on August 22, 2011 and approved by the Court on August 29, 2011.

100. The Court approved the reaffirmation agreement without hearing in light of the certification made by Defendant James Robinson.

101. The Plaintiff's bankruptcy closed without a discharge on September 29, 2011 because the Plaintiff failed to complete the financial management course required under 11 U.S.C. § 727(a)(11).

102. The Plaintiff did not complete the financial management course because she was not aware of the requirement.

103. When the Plaintiff contacted the Defendants about her case closing without a discharge the Defendants advised her that they would only assist her in reopening the case and filing the financial management course if the Plaintiff paid additional attorney fees to the Defendants.

104. The additional attorney fees for this service were not disclosed in the retainer agreement signed by the Plaintiff in 2009 despite the requirements that such disclosure be made under 11 U.S.C. § 528(a)(1).

105. The Plaintiff came to the conclusion that she should rescind her reaffirmation agreement with Ford Motor Credit at some point between September 29, 2011 and November 18, 2011.

106. The Plaintiff requested the assistance of the Defendants to assist her with the rescission of the reaffirmation agreement prior to November 18, 2011 but they advised her that they would only help her if she paid the additional attorney fees to reopen the Plaintiff's bankruptcy.

107. The Defendants further advised the Plaintiff that she could rescind the reaffirmation agreement herself simply by verbally advising the same to Ford Motor Credit.

108. The Plaintiff did not understand the instructions that she was given regarding the verbal rescission of the reaffirmation agreement and she did not trust in the validity of this advice because it did not make sense that a signed written contact could be rescinded by her unilateral verbal statement.

109. The Plaintiff filed a pro se motion to reopen her case, paid the filing fee of $260.00 to the Court, and filed her financial management completion certificate with the Court on November 18, 2011.

110. The Plaintiff made these filings pro se because she did not wish to pay additional attorney fees to the Defendants.

111. The Court entered an Order of Discharge on November 21, 2011, thus precluding the Plaintiff from rescinding the reaffirmation agreement pursuant to 11 U.S.C. § 524(c)(4).

112. The Plaintiff was unaware that the Court would enter the Discharge Order and close the case again within three days of the Plaintiff filing her pro se motion.

113. The Plaintiff made numerous attempts to contact the Defendants after her motion to reopen was filed because she believed that the additional attorney fees that the Defendants had demanded only applied to the motion to reopen her case and as the Plaintiff had resolved this issue herself the Defendants had no excuses not to assist her in rescinding the reaffirmation agreement.

114. The Plaintiff was unable to reach the Defendants because either her telephone messages were never returned or because she could not leave a message on the Defendants' telephone system.

115. On November 23, 2011 the Plaintiff went to the Defendants' office without an appointment and was told that the time for rescinding the reaffirmation agreement had expired by two days.

116. The Plaintiff had let her loan to Ford Motor Credit go into default in reliance of statements made by the Defendants that she could rescind her reaffirmation agreement.

117. Ford Motor Credit repossessed the collateral securing its lien and filed suit against the Plaintiff under the reaffirmation agreement.

118. Ford Motor Credit obtained a judgment and has used that judgment to garnish the Plaintiff's wages.

119. The Plaintiff, in fact, never met with Defendant Ross Briggs despite the fact that he authorized his staff to enter into an attorney-client relationship with the Plaintiff on his behalf when the Plaintiff signed a retainer agreement stating the Ross Briggs would be her attorney at Critique Services LLC.

120. Defendant Ross Briggs never filed a disclosure of the compensation that he received from the Plaintiff for her bankruptcy as required by Federal Rule of Bankruptcy Procedure 2016(b).

121. Defendant James Robinson did file a Form 2016(b) but failed to disclose that he shared

compensation with other Defendants as required by F.R.B.P. 2016(b).

122. The Defendants who are bankruptcy petition preparers acted in violation of 11 U.S.C. § 110 by:

   a. Failing to sign the bankruptcy documents;

   b. Failing to provide notices required under the bankruptcy code to the Plaintiff and filing certain notices with the Court;

   c. Failing to inform the Plaintiff that they could not give legal advice, and in fact giving legal advice;

   d. Failing to provide their social security number on the petition as an identification number;

   e. Failing to provide the Plaintiff with a copy of her legal documents;

   f. To the best of the Plaintiff's knowledge and belief, by using the terms that implied legal services in advertisements directed to the Plaintiff; and

   g. By collecting money for the payment of Court fees directly from the Plaintiff.

123. The Defendants have violated 11 U.S.C. § 526 by:

   a. Failing to promptly provide services as promised;

   b. Refusing to provide required services that were necessary to the Plaintiff's bankruptcy unless the Plaintiff paid additional fees that were not disclosure pursuant to 11 U.S.C. § 528(a)(1);

   c. Intentionally or negligently preparing bankruptcy documents with numerous material errors and omissions that were unknown to the Plaintiff when those documents were executed;

   d. Advising the Plaintiff to make material misstatements regarding her address and dependents, misstatements that solely benefited the Defendants; and

   e. Failing to adequately explain the obligations and risks of bankruptcy to the Plaintiff.

124. The Defendants have violated 11 U.S.C. § 527 to the best of the Plaintiff's knowledge and belief by:

    a. Failing to provide certain required notices to the Plaintiff; and

    b. Maintaining a true and accurate copy of the notices that were provided to the Plaintiff.

125. The Defendants have violated 11 U.S.C. § 528 by:

    a. Failing to provide a written retainer agreement to the Plaintiff that clearly lists all services to be provided, all services that are excluded, the fees charged for the provided services, and the fees charged for the excluded services if such services will be provided for an additional fee;

    b. Failing to execute the retainer agreement that was executed by the Plaintiff as the document was only signed by the Plaintiff and not by any of the Defendants; and

    c. To the best of the Plaintiff's knowledge and belief, by not making all required disclosures in advertisements that solicited the Plaintiff and by being misleading in those advertisements.

126. Plaintiff has been harmed by the Defendants in the following manner:

    a. The Defendants prepared a reaffirmation agreement that on its face recognized an undue hardship upon the Plaintiff; Defendant James Robinson certified before the Court that he had counselled the Plaintiff regarding the reaffirmation when he had not; he made factual assertions in the affirmation agreement that were known to him or his associates to be untrue; and he certified to the Court that he believed that the reaffirmation agreement did not create an undue hardship when it in fact was a hardship;

    b. The Defendants did not properly counsel the Plaintiff about the requirement of 11 U.S.C. § 727(a)(11), which caused the Plaintiff's bankruptcy to close without a discharge, thus delaying the relief afforded by the bankruptcy system and requiring the Plaintiff to pay additional court fees;

    c. The Defendants refused to provide legal services unless the Plaintiff paid an additional attorney fee in violation of 11 U.S.C. § 528(a)(1), which prejudiced the

        Plaintiff from rescinding the reaffirmation agreement;

    d. The Defendants failed to adequately and timely communicate with the Plaintiff regarding the rescission of her reaffirmation agreement, thus exposing her to over $8,000.00 in non-dischargeable debt; and

    e. The Defendants counselled the Plaintiff to perjure herself by making misstatements regarding:

        i. The Plaintiff's address, so that Defendant James Robinson could attend legal hearings in St. Louis County rather than St. Charles County;

        ii. The nature of the Plaintiff's nephews being dependents of the Plaintiff, so that the Plaintiff would be a below median income debtor and thus the Form B22a would be easier to complete for the Defendants and the legal representation easier for the Defendants, as below median debtor bankruptcies are less scrutinized by the bankruptcy Trustee and United States Trustee;

        iii. And that as a result the Plaintiff is exposed to criminal prosecution under 18 U.S.C. §§ 1621 and 1623.

127. The actions of the Defendants were willful in that they were deliberate and intentional.

128. The actions of the Defendants were malicious in that their conduct was certain or almost certain to cause the harm suffered by the Plaintiff.

## Count I

### Violations of 11 U.S.C. § 110
### (Non-Attorney Defendants only)

129. The Defendants who are attorneys have no ownership interest in Defendant Critique Services LLC.

130. The Defendants who are persons and not attorneys were employees or owners of Defendant Critique Services LLC at the time that the Plaintiff was harmed.

131. The non-attorney Defendants were therefore not employees of an attorney at the time the Plaintiff was harmed.

132. Even if non-attorney Defendants were in fact employees of Defendants who are attorneys, these non-attorney Defendants were not directly supervised by attorneys.

133. As such the Defendants who are not attorneys are bankruptcy petition preparers as defined under 11 U.S.C. § 110(a)(1).

134. The non-attorney Defendants who are bankruptcy petition preparers have violated 11 U.S.C. §§ 110(b), 110(c), 110(d), 110(e)(2), 110(f), and 110(g).

135. Monetary damages are authorized pursuant to 11 U.S.C. § 110(i), as more fully described below.

136. Injunctive relief is authorized pursuant to 11 U.S.C. § 110(j), as more fully described below.

## Count II

## Violations of 11 U.S.C. §§ 526, 527, and 528

137. All Defendants herein have provided bankruptcy assistance as defined by 11 U.S.C. § 101(4A) to the Plaintiff, are therefore debt relief agencies as defined by 11 U.S.C. § 101(12A) and are therefore governed by the restrictions and requirements of 11 U.S.C. §§ 526, 527, and 528.

138. The Defendants have violated 11 U.S.C. §§ 526(a)(1), 526(a)(2), 526(a)(3), 527(a)(1), 527(a)(2), 527(b), 527(c), 527(d), 528(a)(1), 528(a)(2), 528(a)(3), 528(a)(4), 528(b)(1), and 528(b)(2).

139. Monetary damages are authorized pursuant to 11 U.S.C. § 526(c)(2) for violations of 11 U.S.C. §§ 526, 527, or 528, as more fully described below.

140. Injunctive relief is authorized pursuant to 11 U.S.C. § 526(c)(5), as more fully described below.

## Prayer for Relief

141. The Plaintiff requests that judgment be entered in her favor for monetary and injunctive relief.

142. Section 110(i) allows the Plaintiff to recover from a petition preparer:

    a. The Plaintiff's actual damages;

    b. The greater of twice the attorney fees paid or $2,000.00, in this case $2,000.00; and

    c. Reasonable attorney fees and costs.

143. Section 526(c)(2) allows the Plaintiff to recover from debt relief agencies:

    a. The Plaintiff's actual damages; and

    b. Reasonable attorney fees and costs.

144. The Plaintiff's actual damages shall be established at trial but should include, without limitation, consideration of the following:

    a. The two pre-bankruptcy credit counseling courses that were unnecessarily taken by the Plaintiff;

    b. The reaffirmed and subsequently defaulted debt owed to Ford Motor Credit;

    c. The amounts garnished from her wages to pay this debt;

    d. The costs that the Plaintiff incurred to reopen her bankruptcy;

    e. The negligence and malfeasance of the Defendants have put the Plaintiff at risk of having her discharge revoked, thus re-exposing her to collection of her debts and making her debts non-dischargeable in a subsequent bankruptcy pursuant to 11 U.S.C. § 523(a)(10);

    f. The intentional subordination of perjury has made the Plaintiff susceptible to criminal prosecution and incarceration, which include the following potential damages:

        i. Loss of freedom;

        ii. Loss of employment, as the Plaintiff's current employer has a policy of terminating employees who are convicted of a felony;

        iii. Loss of future income as the Plaintiff lacks higher education; she only makes the income that she makes now because she began at an entry level position and devoted years of service to a major corporation; and

        iv. Many employers would not hire the Plaintiff, even at an entry level position, if she is convicted of a felony;

      g. The Plaintiff believes that her monetary damages exceed $500,000.00.

145. The Plaintiff has incurred no actual attorney fees as the Plaintiff's attorney is representing her pro bono; however, the Defendants should not benefit from the Plaintiff's attorney's public service and therefore the Court should consider awarding the Plaintiff's attorney fees for assisting the Plaintiff.

146. Sections 110(j) and 526(c)(5) both provide for injunctive relief, the extent of the remedy for which is truly discretionary for the Court, but the Court should consider, without limitation, the following:

      a. The Defendants have a propensity for violating the requirements of Title 11, the Federal Rules of Bankruptcy Procedure, and Missouri Supreme Court Rule 4 governing the rules of attorney professional conduct as evidenced by the fact that multiple attorneys affiliated with Defendant Critique Services LLC have been suspended or disbarred throughout the company's existence; that Defendant Critique Services LLC and several other Defendants have been sued by the United States Trustee for violations of the requirements of Title 11 and said Defendants have entered into consent judgments resolving these complaints, thereby acknowledging the alleged violations; that these same Defendants have knowingly and willfully violated these consent judgments by continuing to violate their terms and the requirements of Title 11; and that a statistically significant portion of the Defendants' clients suffer harm by their experience through the bankruptcy system, harm that could have been avoided but for the negligence and malfeasance of the Defendants;

      b. The Defendants have been provided with ample notice of their misconduct by means of numerous consent judgments with the United States Trustee and that any measures that simply provide more notice to the Defendants of their legal and ethical obligations will more likely than not be met with the same disregard;

      c. That debtors who seek an honest fresh start through bankruptcy and use the services of the Defendants to accomplish the same are exposed to the same negligence and

        malfeasance that have harmed the Plaintiff and the countless other debtors that have been harmed like her;

d. That the only injunctive measure that could protect future debtors from suffering harm by the Defendants is to permanently enjoin the Defendants from practicing law in the Eastern District of Missouri or, after notice and hearing, enjoin non-Defendant attorneys from practicing law in the Eastern District of Missouri who professionally affiliate with the Defendants for the purpose of facilitating bankruptcy assistance.

e. That there is precedence for this relief as several of these Defendants have been permanently enjoined from practicing law or affiliating with attorneys who lawfully practice law in the United States Bankruptcy Court for the Southern District of Illinois (see In re Wiley, Sr., SDIL 03-31505-kjm, docket entry 14 on May 27, 2003).

        WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment in her favor, to grant her the monetary and injunctive relief requested, and for other relief deemed by the Court to be necessary and proper under the circumstances.

        Respectfully Submitted
THE BANKRUPTCY COMPANY

*/s/ David Gunn*
David N. Gunn, #54880MO
2025 S. Brentwood Blvd., Ste. 206
St. Louis, MO 63144
Tel:  314-961-9822
Fax:  314-961-9825
stlouis@tbcwam.com